## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE ECKELS<br>7209 Sunrise Court<br>Warrenton, VA 20187,<br><br>     Plaintiff,<br><br><br>   v.<br><br>ABRIELLE, INC.<br>3301 New Mexico Avenue, N.W.<br>Washington, D.C. 20016,<br><br>  and<br><br>ANN SULLIVAN<br>3205 Cleveland Avenue, N.W.<br>Washington, D.C. 20008,<br><br>     Defendants. | **CIVIL ACTION NO.**<br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT FOR DAMAGES

**A. Jurisdiction and Venue**

1.   This is an action to enforce the overtime provisions of the Fair Labor Standards Act

of 1938 (hereafter, "FLSA"), 29 U.S.C. §207(a)(1) *et seq.,* the District of Columbia Minimum

Wage Revision Act of 1992, (hereafter "DCMWRA"), D.C. Code §§ 32-1003(c) and 32-1012 *et*

*seq.* and the District of Columbia Wage Payment and Wage Collection Law, D.C. Code

(hereafter "DCWPCL") §§ 32-1301 *et seq.*

2.  This Court has subject matter jurisdiction over the FLSA claim in this case pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over the District of Columbia claims pursuant to 28 U.S.C. § 1367.

3.  Defendant Abrielle, Inc. (hereafter "Abrielle") is incorporated within the District of Columbia, has its principal place of business within the District of Columbia, is licensed to do business within the District of Columbia, regularly transacts business in the District of Columbia, and employs plaintiff within the District of Columbia.

4.  Defendant Ann Sullivan resides within the District of Columbia, regularly transacts business in the District of Columbia, and employs plaintiff within the District of Columbia.

5.  The actions complained of herein took place within the District of Columbia.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c).

**B.  Parties**

6.  Plaintiff Jane Eckels is a former employee of Abrielle, Inc. and resides at 7209 Sunrise Court, Warrenton VA 20187.  At all relevant times during her employment, she was engaged in commerce, and in the sales of goods that have moved in commerce.  At all relevant times, more than 50% of her time was spent within the District of Columbia.

7.  Defendant Abrielle is a corporation with a usual place of business at 3301 New Mexico Avenue N.W., Washington, D.C. 20016, trading under the name of "Abrielle Fine Linens and Lingerie."

8.  Defendant Abrielle sells lingerie and linen, and is an enterprise engaged in commerce. It also has employees engaged in selling goods that have moved in commerce.  At all relevant

times, its annual gross volume of sales made or business done has been in excess of $500,000 per year exclusive of excise taxes.

9. Defendant Sullivan is an adult, is the manager of Abrielle, Inc., and on information and belief is the President and the owner of Abrielle, Inc.  She was plaintiff's employer within the meaning of § 3(d) of the FLSA, 29 U.S.C. § 203(d), and within the meaning of § 32-1002(3) of the DCMWRA.

**C.  Statement of the Case**

10. Plaintiff was hired as a Sales Clerk at Abrielle Fine Linens and Lingerie ("Abrielle") on June 16, 2007.

      a.  Plaintiff was hired at a rate of $20.00 an hour.

      b.  She received a $5.00 pay increase effective on July 1, 2007.

      c.  She received a $5.00 pay increase effective on August 1, 2007.

      d.  She was paid at a rate of $30.00 an hour effective from August 1, 2007 until March 1, 2009.

      e.  On March 1, 2009, defendant Sullivan informed plaintiff that her pay would be cut by $6.00 an hour because of economic conditions.

      f.  Effective from March 1, 2009 until plaintiff was injured on April 29, 2009, and temporarily unable to work, she was paid $24.00 an hour.

11. Plaintiff's duties as a Sales Clerk at Abrielle consisted of customer service, cashier services, preparing window and floor displays, and working in the stockroom of a lingerie and linen store.

12. Plaintiff was not permitted to take on a managerial role in her position as Sales Clerk.

13. Plaintiff spent over 50% of her time in her position as Sales Clerk.

14. During the duration of her employment at Abrielle, plaintiff was regularly scheduled or asked to work over 40 hours per week.

15. During the duration of her employment at Abrielle, and especially during the period between June 2007 and November 2008, plaintiff often worked over 40 hours per week, but received only straight pay for the hours worked over 40 hours per week.

16. Plaintiff temporarily left work at Abrielle due to a work-related injury on April 29, 2009.

17. In early May 2009 plaintiff contacted the U.S. Department of Labor regarding her unpaid overtime claim.

18. On May 29, 2009 Ray Gaut of the U.S. Department of Labor contacted plaintiff and informed her that he was assigned to investigate Abrielle's payment practices.

19. Mr. Gaut informed plaintiff that she should give Mr. Gaut permission to reveal her name to defendants Abrielle and Sullivan, to speed up the investigation.

20. Plaintiff gave Mr. Gaut permission to reveal her identity as the complainant.

21. On information and belief, Mr. Gaut revealed plaintiff's name as the complainant to defendants Abrielle and Sullivan.

22. On information and belief, defendants Abrielle and Sullivan originally refused to cooperate with the U.S. Department of Labor's investigation.

23. Plaintiff has been informed by Mr. Gaut that there is a U.S. Department of Labor investigation of Abrielle underway; however plaintiff has been given very little information from Mr. Gaut regarding the investigation. Plaintiff has repeatedly requested her pay records from defendant Sullivan to no avail, and she was informed by Mr. Gaut that she is not entitled to view her own pay records that Ms. Sullivan sends to the U.S. Department of Labor. Plaintiff therefore has little confidence in the U.S. Department of Labor investigation.

24. By mid-May, 2009 plaintiff recovered from her work-related injury enough to perform "light duty" work. She would have been able to work at the register and hold things, but was unable to lift objects or put together displays. She contacted defendant Sullivan by e-mail in or around early May, 2009 in order to inform Ms. Sullivan that she would be able to return to work on May 19, 2009, but could only perform light duty. Defendant Sullivan told plaintiff that there was no "light duty work" available.

25. Plaintiff was cleared by her physician for "regular duty" work starting on June 2, 2009, and contacted defendant Sullivan via e-mail in order to inform Ms. Sullivan that she was cleared for "regular duty" work and to request to be put on the June, 2009 schedule. Defendant Sullivan responded to plaintiff that she would "be in touch." Plaintiff did not hear from her.

26. Plaintiff underwent surgery on June 17, 2009, and was unable to work until July 7, 2009.

27. From July 8, 2009 through July 28, 2009, plaintiff was classified by her physician as capable of doing only light-duty work, with the same restrictions.

28. Upon information and belief, there was both regular-duty and light-duty work available during the times plaintiff could work, that plaintiff could perform.

29. Plaintiff sent an e-mail to defendant Sullivan on July 8, 2009 and again on July 18, 2009 requesting to be placed on the work schedule, but received no response.

30. On July 27, 2009 plaintiff called Abrielle and left a voice message for defendant Sullivan requesting to return to work.

31. On July 28, 2009 Ms. Eckels was once again cleared by her physician for "regular duty" work.

32. On August 3, 2009, defendant Sullivan contacted plaintiff via e-mail to represent to her that her services as a sales clerk were no longer needed and that she was terminated.  The e-mail did not address plaintiff's repeated requests for her pay records.

33. Since early May, 2009 when plaintiff informed defendants Sullivan and Abrielle that she was ready and able to return to work, but was met with no response, plaintiff has experienced significant emotional distress and mental anguish in the form of lack of sleep, nightmares, and depressive symptoms, as a result of her loss of work and defendants' retaliation against her.

6

34. Plaintiff has consulted her primary-care physician and has been placed on anti-depressant medication, as a result of her loss of work and defendants' retaliation against her.

35. On August 21, 2009, counsel for plaintiff made a demand through counsel on defendants for immediate payment of the overtime, liquidated damages, and attorneys' fees to date.  It set forth plaintiff's counsel's calculations of the amounts due in each week for which plaintiff has data, explained the amounts, explained the information used to fill in the gaps in plaintiff's pay records, invited the defendants to provide any information that would make the calculation more accurate, and set forth the amount of attorneys' fees incurred to date.

36. Defendants have tendered a check in the amount of $ 4,329.76 to plaintiff in asserted full payment for what they owe her, and have represented that this is the amount calculated by the U.S. Department of Labor.

37. The amount tendered by defendants is a fraction of plaintiff's calculations of the amount due.

38. Defendants have expressly refused to provide plaintiff with her complete pay records, or any documentation showing how they, and/or the U.S. Department of Labor, calculated the amount due.

39. In the August 21, 2009 demand letter, counsel for plaintiff invited Defendants to provide documentation of any non-retaliatory reason for Ms. Eckels' termination.  Defendants refused to do so.

40. The U.S. Department of Labor has represented to plaintiff that it will not provide to plaintiff any of the pay records defendants gave to it.

41. There is no basis to believe that the calculations performed by defendants and/or the U.S. Department of Labor are correct.

42. Plaintiff has not accepted the check tendered by defendants.

43. Defendants have not paid the statutorily required overtime to plaintiff.

44. Defendants have not paid plaintiff either straight time or the half-time premium for overtime for meal breaks shorter than 20 minutes in weeks in which the time involved was overtime.

45. Defendants' violations of the Fair Labor Standards Act and of the District of Columbia Minimum Wage Revision Act of 1992 have been willful.

46. Defendants have terminated plaintiff in retaliation for exercising her right to initiate a U.S. Department of Labor investigation as to Abrielle's pay practices.

47. Defendants have not paid plaintiff the unpaid wages due to her under the DCWPCL.

48. Plaintiff has attached her Consent Form to this Complaint, in compliance with D.C. Code § 32-1012(b).  The Consent Form is Attachment C hereto.

**D.  Plaintiff's First Cause of Action:  Nonpayment for Overtime Work under the Fair Labor Standards Act**

49. Plaintiff incorporates by reference paragraphs 1-48 above, with the same force and effect as if pleaded herein.

50. The actions and omissions by defendants Abrielle Inc. and Ann Sullivan willfully violated § 7(a)(1) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 207(a)(1), by failing to

pay plaintiff one and one-half times the regular rate at which she was employed when working

over forty hours per week, and by failing to pay plaintiff for meal breaks shorter than 20 minutes.

### E.  Plaintiff's Second Cause of Action:  Nonpayment for Overtime Work under the District of Columbia Minimum Wage Revision Act of 1992

51. Plaintiff incorporates by reference paragraphs 1- 48 above, with the same force

and effect as if pleaded herein.

52. The actions and omissions by defendants Abrielle Inc. and Ann Sullivan, without

good faith or reasonable grounds, violated § 32-1003(c) of the District of Columbia Minimum

Wage Revision Act of 1992 by failing to pay plaintiff one and one-half times the regular rate at

which they were employed when working over forty hours per week.

### F.  Plaintiff's Third Cause of Action:  Nonpayment of Wages under the District of Columbia Wage Payment and Wage Collection Law

53. Plaintiff incorporates by reference paragraphs 1-48 above, with the same force

and effect as if pleaded herein.

54. The actions and omissions by defendants Abrielle Inc. and Ann Sullivan violated

§ 32-1303(1) of the DCWPCL by failing to pay plaintiff the wages due to her under the law

within one working day following her termination.

### G.  Plaintiff's Fourth Cause of Action:  Retaliation under the Fair Labor Standards Act

55. Plaintiff incorporates by reference paragraphs 1-48 above, with the same force

and effect as if pleaded herein.

56. The actions and omissions by defendants Abrielle Inc. and Ann Sullivan violated § 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), by discharging plaintiff for having instituted a proceeding with the U.S. Department of Labor.

**H. Plaintiff's Fifth Cause of Action:  Wrongful Discharge in Violation of Public Policy**

57. Plaintiff incorporates by reference paragraphs 1-48 above, with the same force and effect as if pleaded herein.

58. The actions and omissions by defendants Abrielle Inc. and Ann Sullivan violated § 32-1010(3) of the DCMWRA by discharging plaintiff for having instituted a proceeding with the U.S. Department of Labor.

59. The actions and omissions by defendants Abrielle Inc. and Ann Sullivan violated public policy by discharging plaintiff for having instituted a proceeding with the U.S. Department of Labor.

**I.  Prayer**

WHEREFORE, plaintiff respectfully requests that this Court grant the following relief:

1.  Award plaintiff the unpaid overtime premiums for all hours worked in excess of forty hours a week since plaintiff was hired; and

2.  Award plaintiff liquidated damages in an amount equal and additional to the amount of back pay awarded; and

3. Award plaintiff liquidated damages for defendant's retaliation under the FLSA in an amount equal and additional to the amount of wages lost since termination, set off by any Workers Compensation award plaintiff may receive; and

4. Award plaintiff 10% of the pay rightfully owed to plaintiff for each day that she has not been paid since August 5, 2009, as required by the DCWPCL, to the extent that the award is not duplicative of the liquidated damages under paragraph 3 of this prayer; and

5. Award plaintiff compensatory damages in an amount to be proven for emotional distress caused by plaintiff's retaliatory termination; and

6. Award plaintiff punitive damages in an amount to be proven; and

7. Award plaintiff her reasonable attorneys' fees and expenses.

## J. **Jury Demand**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands trial by jury of all questions of fact, and of all matters as to which the Seventh Amendment to the Constitution of the United States guarantees the right of trial by jury.

Respectfully submitted,

Richard T. Seymour (DC Bar No. 28100)
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
Voice: 202-862-4320
Cell:    202-549-1454
          Facsimile:  800-805-1065 and 202-828-4130
          e-mail: rick@rickseymourlaw.net

Dated:  September 11, 2009